IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVE LOPEZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MEGAN J. BRENNAN, Postmaster General, United States Postal Service,<br><br>　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS (ECF NO. 14)**<br><br>Civil No. 2:15-cv-00595-EJF<br><br>Magistrate Judge Evelyn J. Furse |

　　　　Plaintiff Steve Lopez filed the present Title VII civil rights action in August 2015. (Compl., ECF No. 2.)  Mr. Lopez asserts claims for a national origin and race based hostile work environment and retaliation for claiming national origin or race based discrimination against his employer, the United States Postal Service ("Postal Service").[1]  (See id.)  Defendant Megan J. Brennan, Postmaster General, United States Postal Service ("Postmaster Brennan") now moves the Court[2] for summary judgment on all of Mr. Lopez's claims.  (Def.'s Mot. for Summ. J. on All Claims ("Mot."), ECF No. 14.)

---

[1] Mr. Lopez's Complaint purports to assert three causes of action against the Postal Service.  (See Compl., ECF No. 2.)  In her Motion, Postmaster Brennan interprets Mr. Lopez's Complaint as asserting two causes of action against the Postal Service—one for hostile work environment and one for retaliation.  Mr. Lopez does not dispute this characterization in his Opposition, and the Court agrees with Postmaster Brennan that Mr. Lopez's Complaint asserts only those two causes of action against the Postal Service.

[2] The parties consent to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (ECF No. 8.)

Mr. Lopez opposes Postmaster Brennan's Motion for Summary Judgment but does not dispute any of the facts set forth in her Statement of Undisputed Facts or set forth any additional undisputed facts in support of his Opposition. (See generally Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. on All Claims ("Opp'n"), ECF No. 19.)

After considering the parties' briefing and the undisputed facts in this case, the Court finds Mr. Lopez fails to set forth facts from which a rational jury could conclude that the Postal Service subjected him to a hostile work environment because the alleged actions and inactions are neither severe nor pervasive. Similarly, the Court finds Mr. Lopez fails to set forth facts from which a rational jury could conclude that the Postal Service retaliated against him for engaging in activity that Title VII protects because of a lack of causal connection between the protected activity and the alleged retaliation. Accordingly, the Court GRANTS Postmaster Brennan's Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

The Court grants summary judgment when the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.'" Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000) (internal quotations omitted)).

"'[W]here the non moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific

facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." <u>McKnight v. Kimberly Clark Corp.</u>, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). Further, "in opposing a motion for summary judgment, the non-moving party 'cannot rest on ignorance of facts, on speculation, or on suspicion.'" <u>Bird v. W. Valley City</u>, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988)).

In evaluating a motion for summary judgment, the Court reviews "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." <u>Jones v. Norton</u>, 809 F.3d 564, 573 (10th Cir. 2015).

## **FACTUAL BACKGROUND**

The following facts are taken from Postmaster Brennan's Motion. (Mot. 2–7, ECF No. 14.) Mr. Lopez does not dispute these facts or set forth any additional facts to support his Opposition. (<u>See</u> Opp'n 2–12, ECF No. 19.)

Mr. Lopez worked as a city carrier for the Postal Service in the Holladay Post Office during all times relevant to this case. (Mot., Statement of Undisputed Facts ("Facts") ¶ 1, ECF No. 14; Ex. A to Mot., Equal Emp't Opportunity Comm'n ("EEOC") Hr'g Tr. 16:12–17:2, ECF No. 14-2.) Mr. Lopez's national origin is Mexico. (Mot., Facts ¶ 2, ECF No. 14; Ex. B to Mot., Lopez EEO Aff., USPS000097, ECF No. 14-3.) Mr. Lopez has a history of filing Equal Employment Opportunity ("EEO") complaints dating back to the 1980s. (Mot., Facts ¶ 3, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 117:25–118:9, ECF No. 14-2.)

Heidi Clark directly supervised Mr. Lopez during the relevant period. (Mot., Facts ¶ 4, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 17:7–14, ECF No. 14-2; Ex. C to Mot., Clark EEO Aff., USPS000184, ECF No. 14-4.) Karen Higgs served as station manager during the relevant period . (Mot., Facts ¶ 4, ECF No. 14; Ex. D to Mot., Higgs EEO Aff., USPS000153, ECF No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 302:20–304:21, ECF No. 14-2.) Eric Fields, one of Mr. Lopez's co-workers, worked as a clerk at the Holladay Post Office and union steward during the time relevant to this case. (Mot., Facts ¶ 5, ECF No. 14; Ex. E to Mot., Fields EEO Aff., USPS000241, ECF No. 14-6; Ex. A to Mot., EEOC Hr'g Tr. 98:2–7, 204:16–205:2, ECF No. 14-2.) Mr. Fields is of German-Irish descent. (Mot., Facts ¶ 6, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 203:7–11, ECF No. 14-2.)

Ms. Clark, Ms. Higgs, and Mr. Fields knew Mr. Lopez's race and national origin during the relevant time. (Mot., Facts ¶ 7, ECF No. 14; Ex. C to Mot., Clark EEO Aff., USPS000183, ECF No. 14-4; Ex. D to Mot., Higgs EEO Aff., USPS000152, ECF No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 254:6–13, ECF No. 14-2.) Ms. Clark and Ms. Higgs also knew of Mr. Lopez's prior EEO activity during the relevant period. (Mot., Facts ¶ 8, ECF No. 14; Ex. D to Mot., Higgs EEO Aff., USPS000152, ECF No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 368:23–369:1, ECF No. 14-2.)

### A. Lori Sugar Promotion

At various times, Mr. Lopez told Ms. Higgs he sought a promotion outside of the Holladay Post Office. (Mot., Facts ¶ 9, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 316:11-16, 344:16–345:4, ECF No. 14-2.) In December 2010, Ms. Higgs promoted another Holladay Post Office employee, Lori Sugar, to a temporary supervisor position

known as 204(b).  (Mot., Facts ¶ 10, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 315:17–316:10, ECF No. 14-2.)  Ms. Higgs did not offer Mr. Lopez that position, and he did not compete for it.  (Mot., Facts ¶ 11, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 63:20–64:1, 316:17–22, ECF No. 14-2.)

In January 2011, Mr. Lopez called Salt Lake City Postmaster Charley Wright to complain about Ms. Sugar's promotion, citing her lack of education and prior criminal record.  (Mot., Facts ¶ 12, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 21:2–13, 31:1–23, ECF No. 14-2; Ex. F to Mot., Wright EEO Aff., USPS000202, USPS000211, ECF No. 14-7.)  Mr. Lopez claims he told Mr. Wright that he is more qualified than Ms. Sugar, but she got promoted because she is white and friends with Ms. Higgs.  (Mot., Facts ¶ 12, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 21:2–13, 31:1–23, ECF No. 14-2.)  Mr. Wright shared Mr. Lopez's concerns about Ms. Sugar's promotion with Ms. Higgs but did not mention anything to Ms. Higgs about national origin discrimination or retaliation. (Mot., Facts ¶ 13, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 326:18–327:20, ECF No. 14-2.)  Mr. Lopez also voiced his concerns about cronyism and favoritism to Ms. Sugar. (Mot., Facts ¶ 14, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 22:21–23:16, ECF No. 14-2.)

### B.  Mr. Lopez and Mr. Fields Interactions

Until approximately 2011, Mr. Lopez and Mr. Fields remained cordial with each other.  (Mot., Facts ¶ 15, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 208:7–209:11, ECF No. 14-2.)  After Ms. Sugar's promotion, Mr. Lopez and Mr. Fields began to have a negative relationship.  (Mot., Facts ¶ 16, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 23:10–24:1, ECF No. 14-2.)  Mr. Fields sang, whistled, and changed song lyrics to

reference those around him, which annoyed other coworkers including Mr. Lopez. (Mot., Facts ¶¶ 17, 18, ECF No. 14; Ex. B to Mot., Lopez EEO Aff., USPS000125, ECF No. 14-3; Ex. D to Mot., Higgs EEO Aff., USPS000157, ECF No. 14–5; Ex. A to Mot., EEOC Hr'g Tr. 207:4–13, ECF No. 14-2.)

At some point after Ms. Sugar's promotion, Mr. Lopez "crossed crafts" by handling and sorting certain mail that under union rules only clerks could handle. (Mot., Facts ¶ 19, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 216:4–217:15, ECF No. 14-2.) Mr. Fields asked Mr. Lopez to stop, threatened to file grievances, and informed management about the situation. (Id.) Management prohibited Mr. Lopez from sorting this type of mail. (Mot., Facts ¶ 20, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 370:8–371:6, ECF No. 14-2.) On one occasion, when Mr. Lopez suggested he could help with the sorting of such mail, Mr. Fields, after an exchange with Mr. Lopez, told him "I'm going to take you out in the parking lot, kick your ass, fuck you in the ass and turn it into a man pussy." (Mot., Facts ¶ 21, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 32:25–34:9, ECF No. 14-2; Ex. B to Mot., Lopez EEO Aff., USPS000125, ECF No. 14-3.) Later, when Mr. Lopez accused Mr. Fields of stealing mail, he called Mr. Lopez a "lying piece of shit." (Mot, Facts ¶ 22, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 220:22–221:23, ECF No. 14-2.)

Mr. Fields also called Mr. Lopez a "red-headed Mexican" and "red-headed stepchild." (Mot., Facts ¶ 23, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 35:25–36:15, ECF No. 14-2.) Mr. Lopez admits he jokingly and publicly referred to himself at work as a "red-headed Mexican." (Mot., Facts ¶ 24, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 88:10–90:1, ECF No. 14-2.) In addition, Mr. Fields once asked Lopez, "Who's your

daddy?" and later said to Mr. Lopez "I'm your daddy," which Mr. Lopez interpreted as racially derogatory. (Mot., Facts ¶ 25, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 36:11–37:11, ECF No. 14-2.) In response, Mr. Lopez told Mr. Fields "you better shut your fucking mouth, I don't need your ghetto jokes, keep them on the street." (Mot., Facts ¶ 26, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 36:11–37:11, ECF No. 14-2.)

Both Ms. Clark and Ms. Higgs knew about the negative relationship between Mr. Fields and Mr. Lopez, and both Mr. Fields and Mr. Lopez informed management the other had harassed him. (Mot., Facts ¶¶ 27, 28, ECF No. 14; Ex. C to Mot., Clark EEO Aff., USPS000184, ECF No. 14-4; Ex. D to Mot., Higgs EEO Aff., USPS000153, USPS000156, ECF No. 14-5.) Ms. Higgs investigated these reports and consulted the Threat Assessment Team. (Mot., Facts ¶ 29, ECF No. 14; Ex. D to Mot., Higgs EEO Aff., USPS000153, ECF No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 341:20–342:12, ECF No. 14-2.) Given the lack of witnesses, Ms. Higgs concluded that the complaints were "he said/she said." (Mot., Facts ¶ 30, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 318:6–19, 339:4–341:7, ECF No. 14-2.) Ms. Higgs gave both Mr. Fields and Mr. Lopez instructions, including not to speak to each other, or come near each other, and to focus on their jobs. (Mot., Facts ¶ 31, ECF No. 14; Ex. D to Mot., Higgs EEO Aff., USPS000153, USPS000156, ECF No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 318:6–19, 341:4–14, ECF No. 14-2.) Beyond Ms. Higgs's instructions, neither Mr. Fields nor Mr. Lopez received discipline for their behavior toward each other. (Mot., Facts ¶ 32, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 319:9–13, ECF No. 14-2; Ex. D to Mot., Higgs EEO Aff., USPS000156, ECF No. 14-5.)

### C. Door Policy[3]

At the Holladay Post Office, a Dutch door, also referred to as the "front door,"
leads from the customer lobby area to the area where the clerks, including Mr. Fields,
work. (Mot., Facts ¶¶ 33, 34, ECF No. 14; Ex. F to Mot., Wright EEO Aff.,
USPS000207–08, ECF No. 14-7; Ex. A to Mot., EEOC Hr'g Tr. 25:5–10, ECF No. 14-2;
Ex. D to Mot., Higgs EEO Aff., USPS000161, ECF No. 14-5.) If a carrier wanted to
enter through the Dutch door, Mr. Fields had to open the door, which disrupted his work,
or leave the door unlocked. (Mot., Facts ¶ 39, ECF No. 14; Ex. A to Mot., EEOC Hr'g
Tr. 328:20–330:4, ECF No. 14-2.) Carriers, including Mr. Lopez, used to enter the office
through the Dutch door. (Mot., Facts ¶ 35, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr.
328:20–330:4, ECF No. 14-2.) Allowing carriers to use the Dutch door created security
risks because customers would sometimes enter the workroom floor through the
unlocked door. (Mot., Facts ¶ 36, ECF No. 14; Ex. D to Mot., Higgs EEO Aff.,
USPS000159–65, ECF No. 14-5; Ex. F to Mot., Wright EEO Aff., USPS000207–08,
ECF No. 14-7; Ex. A to Mot., EEOC Hr'g Tr. 328:20–330:4, ECF No. 14-2.)

Ms. Higgs determined that no employee, unless he or she had a key, could use
the Dutch door for security reasons and that it needed to remain locked at all times.
(Mot., Facts ¶ 38, ECF No. 14; Ex. D to Mot., Higgs EEO Aff., USPS000159–65, ECF
No. 14-5; Ex. A to Mot., EEOC Hr'g Tr. 328:20–330:4, ECF No. 14-2.) Further, Ms.

---

[3] The Postal Service interprets the allegations in Mr. Lopez's purported second cause of
action relating to the Dutch door as forming part of the basis for his retaliation claim
only. (Mot. 11, ECF No. 14.) The Court interprets those allegations as forming part of
the basis for his hostile work environment claim, as well. Accordingly, the Court
considers the undisputed facts concerning the Holladay Post Office's Dutch door policy
in the context of both of Mr. Lopez's claims in deciding Postmaster Brennan's Motion.

Higgs held informal meetings in which she instructed carriers not to use the Dutch door. (Mot., Facts ¶ 37, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 330:5–10, ECF No. 14-2.) Mr. Lopez and others continued to use the Dutch door at times, but Mr. Lopez did not receive any discipline for continuing to use the door. (Mot., Facts ¶ 40, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 101:24–102:11, 234:18–25, 330:11–21, ECF No. 14-2.) When Ms. Higgs saw anyone without a key use the door, she told them not to do it. (Mot., Facts ¶ 41, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 330:11–331:2, ECF No. 14-2.) Mr. Fields closed the door if he saw it propped open, locking out Mr. Lopez and others who left it open. (Mot., Facts ¶ 42, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 234:8–12, ECF No. 14-2.)

### D.  Letter of Warning

On November 27, 2011, Mr. Lopez refused to scan as "attempted" an express package intended for a closed business. (Mot., Facts ¶ 43, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 55:1–24, ECF No. 14-2.) Mr. Lopez believed scanning the package as an attempted delivery would be fraudulent since he did not actually attempt delivery. (Id.)

The Postal Service gives a refund for express packages not delivered within twenty-four hours. (Mot., Facts ¶ 44, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 309:13–311:4, ECF No. 14-2.) If the receiving business is closed and the package cannot be delivered, the postal employee must scan the package as "attempted" to "stop the

clock" and avoid a refund to the sender.  (Mot., Facts, ¶ 44, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 309:13–311:4, 333:13-334:17, ECF No. 14-2.)

On December 3, 2011, Ms. Clark issued Mr. Lopez a Letter of Warning for failing on November 27 to scan the express package as "attempted" and follow prior instructions to scan express mail pieces as "attempted" when a business is closed in order to stop the clock.  (Mot., Facts, ¶ 46, ECF No. 14; Ex. G to Mot., Letter of Warning, ECF No. 14-8.)  The Letter states that "[f]uture deficiencies will result in more severe disciplinary action being taken against you" and that "[s]uch action may include a suspension[] or removal from the Postal Service."  (Ex. G to Mot., Letter of Warning, ECF No. 14-8.)  The Postal Service's Employee and Labor Relations Manual provides that employees must follow a supervisor's instructions, and if they have any reason to question the instruction, they must still follow the order and then file a written protest or appeal.  (Mot., Facts, ¶ 45, ECF No. 14; Ex. G to Mot., Letter of Warning, ECF No. 14-8.)

Ms. Clark believed that a suspension may have been more appropriate discipline for Mr. Lopez given his past missed scans but thought a Letter of Warning would solve the problem.  (Mot., Facts ¶ 47, ECF No. 14; Ex. C to Mot., Clark EEO Aff., USPS000190, ECF No. 14-4.)  Ms. Higgs had no involvement in issuing the Letter of Warning to Mr. Lopez.  (Mot., Facts ¶ 48, ECF No. 14; Ex. A to Mot., EEOC Hr'g Tr. 332:12–333:12, 376:18–377:3, ECF No. 14-2.)

<u>**DISCUSSION**</u>

**I.    HOSTILE WORK ENVIRONMENT CLAIM**

Mr. Lopez asserts Mr. Fields engaged in discriminatory and harassing conduct toward him because of his race and national origin, resulting in a hostile work environment.  (Compl., ¶¶ 13–27, ECF No. 2.)  Postmaster Brennan moves for summary judgment on this claim, arguing that no reasonable jury could conclude the alleged discrimination rose to the level of sufficiently severe or pervasive or that Mr. Fields targeted Mr. Lopez because of his race or national origin.  (Mot. 9–11, ECF No. 14.)  Mr. Lopez counters that the evidence raises a genuine issue of material fact as to whether a hostile work environment existed.  (Opp'n 13–22, ECF No. 19.)  The Court agrees with Postmaster Brennan that summary judgment is appropriate on Mr. Lopez's hostile work environment claim.

"Title VII forbids employment discrimination on the basis of race or national origin."  <u>Chavez v. New Mexico</u>, 397 F.3d 826, 831 (10th Cir. 2005).  "This includes an employee's claims of a hostile work environment based on race or national origin discrimination."  <u>Herrera v. Lufkin Indus., Inc.</u>, 474 F.3d 675, 680 (10th Cir. 2007).  However, "Title VII does not establish 'a general civility code,' for the workplace[.]"  <u>Morris v. City of Colorado Springs</u>, 666 F.3d 654, 663–64 (10th Cir. 2012) (internal citation omitted) (quoting <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 81 (1998)).  Therefore, "the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."  <u>Morris</u>, 666 F.3d at 664.

To survive summary judgment on a racially hostile work environment claim, a plaintiff must show "that a rational jury" could conclude that (1) "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) the victim "was targeted for harassment because of [his] . . . race[] or national origin." Sandoval v. City of Boulder, 388 F.3d 1312, 1326–27 (10th Cir. 2004) (internal quotations omitted).

A hostile work environment exists if the conduct is either severe or pervasive. Morris, 666 F.3d at 665. Courts assess whether the work environment is not only subjectively hostile but objectively hostile to a reasonable person in the plaintiff's position. Id. at 664. Courts evaluate objective severity and pervasiveness according to the "'totality of the circumstances,'" considering factors such as "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 664 (quoting Chavez, 397 F.3d at 832–33).

A plaintiff cannot demonstrate pervasiveness by showing "'a few isolated incidents of racial enmity' or 'sporadic racial slurs.'" Chavez, 397 F.3d at 832 (quoting Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994)). "Instead, 'there must be a steady barrage of opprobrious racial comments.'" Id. (quoting Bolden, 43 F.3d at 551). Further, "[f]acially neutral abusive conduct can support a finding of . . . animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially] discriminatory conduct." O'Shea v. Yellow Tech. Serv's., 185 F.3d 1093, 1097 (10th Cir. 1999) (applying law in gender discrimination context).

Postmaster Brennan argues that Mr. Lopez fails to establish a hostile work environment claim because Mr. Fields's alleged harassment was not sufficiently severe or pervasive. (Mot. 9–11, ECF No. 14.) The Court agrees. The undisputed facts show that beginning in 2011, Mr. Fields (1) called Mr. Lopez a "red-headed Mexican," (2) called Mr. Lopez a "red-headed stepchild," (3) told Mr. Lopez "I'm going to take you out in the parking lot, kick your ass, fuck you in the ass and turn it into a man pussy," (4) called Mr. Lopez a "lying piece of shit," (5) asked Mr. Lopez "Who is your daddy?" and responded "I'm you're daddy," (6) subjected Mr. Lopez and others to annoying singing, and (7) closed the Dutch (front) door if open, locking out Mr. Lopez and others. Mr. Lopez has not put forth any evidence in response to Postmaster Brennan's Motion that Mr. Fields called him a "red-headed Mexican" or "red-headed stepchild" repeatedly nor has he put forth evidence that Mr. Fields engaged in harassing conduct beyond these incidents.

Even viewing the facts in the light most favorable to Mr. Lopez, a rational jury could not find that these isolated incidents amount to pervasive racially discriminatory behavior that permeated the workplace. At best, Mr. Fields's "red-headed Mexican" comment amounts to a derogatory racial comment. However, "red-headed Mexican" is not a known or obvious racial slur. Moreover, the undisputed facts establish that Mr. Lopez too referred to himself as a "red-headed Mexican" at work, further calling into question whether that comment qualifies as derogatory. However, even if the Court assumes that it does, one derogatory racial comment does not establish pervasive racially harassing conduct. See Chavez, 397 F.3d at 832 (finding that two racially

13

offensive comments "fall far short of the 'steady barrage' required for a hostile environment claim").

In his Opposition, Mr. Lopez argues that the Court must view the "red-headed Mexican" comment in totality with Mr. Fields's other conduct. (Opp'n 19-21, ECF No. 19.) While facially neutral abusive conduct can support a hostile work environment claim, it can only do so where other overtly racial conduct exists. See O'Shea, 185 F.3d at 1097. Mr. Fields's "red-headed Mexican" comment—which Mr. Lopez also used to describe himself at work—fails to support an inference that racial animus motivated the rest of Mr. Fields's harassing behavior toward Mr. Lopez.

Moreover, an examination of the totality of the circumstances fails to show that Mr. Fields engaged in pervasive discriminatory conduct toward Mr. Lopez or that he targeted Mr. Lopez because of his race or national origin. First, the undisputed facts show Mr. Lopez also engaged in inappropriate conduct toward Mr. Fields, and both complained to management about each other. In one instance, after Mr. Fields said "I'm your daddy," Mr. Lopez told Mr. Fields, "you better shut your fucking mouth, I don't need your ghetto jokes, keep them on the street." In addition, Mr. Fields called Mr. Lopez a "lying piece of shit" after Mr. Lopez accused him of stealing mail. Thus the circumstances indicate Mr. Fields and Mr. Lopez had a contentious relationship and reacted—often harshly and inappropriately—to one and another's words and conduct. The alleged conduct does not demonstrate that Mr. Fields discriminated against Mr. Lopez or targeted him because of his race or national origin. Second, the undisputed facts show that Mr. Fields's singing annoyed other coworkers and was not limited to Mr. Lopez. The facts also show Mr. Fields closed the Dutch door when he saw it open,

locking out any coworkers without a key—not that he targeted Mr. Lopez with this action. Further, the facts show Mr. Fields closed the door after instruction from management that the Dutch door should remain locked. Simply put, Mr. Lopez fails to put forth evidence showing that Mr. Fields engaged in discriminatory conduct toward him or that he targeted Mr. Lopez due to his race or national origin, as required to prove a hostile work environment claim. See Sandoval, 388 F.3d 1312, 1326–27 (stating that hostile work environment plaintiff must show he "was targeted for harassment because of [his] . . . race[] or national origin"); Bolden, 43 F.3d at 551 ("General harassment if not racial or sexual is not actionable.").

Mr. Lopez also argues that a reasonable jury could conclude that Mr. Fields's threat to "beat and rape" him is sufficiently severe to establish a hostile work environment claim. (Opp'n 19, ECF No. 19.) The Court disagrees. As Postmaster Brennan points out in her Reply, the bar to establish a hostile work environment based on an isolated incident remains very high. (Reply 2–3, ECF No. 20.) Conduct must "be especially egregious or extreme where only isolated incidents are alleged." Morris, 666 F.3d at 667. For example, the Tenth Circuit has found single incidents of sexual assault sufficiently severe to create a hostile working environment. See id. at 666–67; see also Gerald v. Locksley, 849 F. Supp. 2d 1190, 1232 (D.N.M. 2011) ("Rape and other forms of severe sexual assault are the archetypical examples of single incidents which can establish a hostile work environment.").

Here, Mr. Fields told Mr. Lopez "I'm going to take you out in the parking lot, kick your ass, fuck you in the ass and turn it into a man pussy," in response to Mr. Lopez's offer to help sort mail that Mr. Fields and management had previously told him he may

not sort.  Mr. Fields's comment, standing alone, does not rise to the level of "egregious or extreme" necessary to create a hostile working environment.  No physical assault, or even an overt act in furtherance of an assault, took place.

Mr. Fields and Mr. Lopez obviously had a very difficult relationship, and the Court does not condone Mr. Fields's conduct toward Mr. Lopez.  However, that conduct, while "boorish, juvenile, [and] annoying," Morris, 666 F.3d at 664, does not support a racially hostile work environment claim.  No rational jury could find Mr. Fields's conduct was so severe or pervasive that it altered the terms of Mr. Lopez's employment, or that Mr. Fields targeted Mr. Lopez for harassment because of his race or national origin.  Accordingly, the Court GRANTS Postmaster Brennan summary judgment on Mr. Lopez's hostile work environment claim.

## II. RETALIATION CLAIMS

Mr. Lopez also asserts that the Postal Service retaliated against him after complaining about Ms. Sugar's promotion.  (Compl., ¶¶ 20–31, ECF No. 2.)  Specifically, Mr. Lopez appears to allege three acts of retaliation:  (1) that management failed to stop Mr. Fields's harassment, (2) that management instituted the Dutch door policy against him only, and (3) that his supervisor issued a Letter of Warning for failing to scan as "attempted" delivery an express package.[4]  (Id.)  Postmaster Brennan moves

---

[4] Postmaster Brennan states in her Motion that Mr. Lopez does not allege the Postal Service took these actions "in retaliation for his EEO complaints" but did so "as a result of his complaints about [Ms.] Sugar's promotion in January 2011."  (Mot., ECF No. 11–12, ECF No. 14.)  Mr. Lopez does not dispute this assertion in his Opposition.  (See generally Opp'n, ECF No. 19.)  Accordingly, the Court finds Mr. Lopez waived any argument on this point and addresses the allegations concerning Ms. Sugar's promotion only.

for summary judgment on Mr. Lopez's retaliation claim, arguing that Mr. Lopez cannot establish that he engaged in a protected activity, that he suffered a materially adverse employment action, or that a causal connection exists between the two. (Mot. 11–15, ECF No. 14.)

Mr. Lopez counters that, while a "close call," the evidence regarding his complaints about Ms. Sugar's promotion create an issue of material fact as to whether he engaged in protected activity. (Opp'n 23–24, ECF No. 19.) Mr. Lopez also asserts that the evidence raises a material issue of fact as to whether his Letter of Warning constitutes a material adverse action. Mr. Lopez claims the Postal Service's "incoherency" in issuing the Letter of Warning supports an inference that management's stated reason for issuing it is pretextual, thus permitting his claim to survive summary judgment. (Opp'n 24–27, ECF No. 19.) As addressed below, the Court agrees with Postmaster Brennan and grants summary judgment on Mr. Lopez's retaliation claim.

Title VII prohibits retaliation "against an employee for opposing practices made unlawful by the statute." Hansen v. SkyWest Airlines, 844 F.3d 914, 924 (10th Cir. 2016). To prove a Title VII retaliation claim, a plaintiff may "present direct evidence, or he can rely on circumstantial evidence and utilize the McDonnell Douglas burden-shifting test." Ward v. Jewell, 772 F.3d 1199, 1202 (10th Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case by showing "'(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."

<u>Somoza v. Univ. of Denver</u>, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting <u>Argo v. Blue</u>
<u>Cross & Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1202 (10th Cir. 2006)). "'Once the
plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the
defendant (i.e., employer) to come forward with a legitimate, non-retaliatory rationale for
the adverse employment action. If the defendant does so, the plaintiff must show that
the defendant's proffered rationale is pretextual." <u>Hansen</u>, 844 F.3d at 925 (quoting
<u>Lounds v. Lincare, Inc.</u>, 812 F.3d 1208, 1234 (10th Cir. 2015)).

As Postmaster Brennan notes, Mr. Lopez does not set forth direct evidence of
retaliation, (Mot. 12, ECF No. 14), so the Court considers whether he has established a
prima facie case of retaliation.

## A.  Protected Opposition to Discrimination

Postmaster Brennan argues that Title VII does not protect Mr. Lopez's
complaints about Ms. Sugar's promotion. (Mot. 12–13, ECF No. 14.) Specifically,
Postmaster Brennan argues that no evidence exists that either Ms. Higgs or Ms. Clark
knew that Mr. Lopez was "opposing discrimination," as opposed to complaining about
cronyism and favoritism. (<u>Id.</u>) Mr. Lopez counters that he complained about Ms.
Sugar's promotion because he had not received a promotion on account of his race and
national origin, but Ms. Sugar, a white female with a criminal record, had received a
promotion. (Opp'n 22–24, ECF No. 19.)

The undisputed facts show Mr. Lopez complained to Mr. Wright, Salt Lake City's
Postmaster General, about Ms. Sugar's promotion, mentioning at a minimum, her lack
of education and prior criminal record. Mr. Lopez also claims he told Mr. Wright he was
more qualified than Ms. Sugar, but she got promoted because she is white and friends

with Ms. Higgs.  The undisputed facts also show that while Mr. Wright shared Mr. Lopez's concerns about Ms. Sugar's promotion with Ms. Higgs, he did not mention anything to Ms. Higgs about national origin discrimination or retaliation.

Based on this record and viewing the facts in the light most favorable to Mr. Lopez, the Court cannot conclude that Mr. Lopez never voiced complaints to a Postal Service superior that Ms. Sugar's promotion evidenced racial or national origin discrimination toward him.  If Mr. Lopez did in fact tell Mr. Wright he was more qualified than Ms. Sugar, but she received the promotion because she is white, a rational jury could conclude this statement shows that his complaints about her promotion rise to the level of protected opposition to discrimination.  See Hertz v. Luzenac Am., Inc., 370 F.3d 1014, 1015–16 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.  A plaintiff need not convince the jury that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory." (citation omitted)).  That Mr. Wright did not then convey these specific concerns to Ms. Higgs is of no import because Mr. Wright is Mr. Lopez's superior.  Therefore, based on the record before it, the Court finds a genuine issue of material fact exists as to whether Mr. Lopez engaged in protected opposition to discrimination when complaining about Ms. Sugar's promotion.

### B.  Materially Adverse Actions

Postmaster Brennan argues that even if the Court construed Mr. Lopez's complaints as protected activity, his claims nevertheless fail because none of the alleged actions was materially adverse.  (Mot. 13–14, ECF No. 14.)  Specifically,

Postmaster Brennan argues that the Letter of Warning Mr. Lopez received did not adversely affect his employment. Postmaster Brennan further points out that the evidence in the record does not support the other alleged material adverse actions—that management failed to stop Mr. Fields's harassment and instituted the Dutch door policy only as to Mr. Lopez. (Id.) Mr. Lopez counters that a fact finder could reasonably view the Letter of Warning as materially adverse, though concedes the issue presents a "close call." (Opp'n 24–26, ECF No. 19.)

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). An employment action qualifies as materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (internal quotation marks and citation omitted). Courts judge materiality from the perspective of a "reasonable person in the plaintiff's position" to "screen out trivial conduct." Id. at 69–70. "This standard focuses on the employer's retaliatory action, not the underlying discrimination the employee had opposed." Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009).

The facts in the record do not support two of the three materially adverse actions of which Mr. Lopez complains. Mr. Lopez claims that management's failure to stop Mr. Fields's harassment and management's application of the Dutch door policy only to him constitute adverse employment actions. However, the record shows that neither of these claims have factual support. The record shows management actively addressed the conflict between Mr. Lopez and Mr. Fields. Ms. Higgs investigated their complaints, consulted the Threat Assessment Team, and issued instructions to both of them. Mr.

Lopez does not dispute that Ms. Higgs concluded that given the lack of witnesses, the complaints were simply "he said/she said." Further, the undisputed facts show that the Dutch door policy applied to all employees without a key, not just Mr. Lopez. Moreover, Mr. Lopez does not substantively address these two supposedly material adverse actions in his Opposition, (Opp'n 24–26, ECF No. 19), thereby conceding that that they do not amount to materially adverse employment actions sufficient to support a retaliation claim. Accordingly, the Court finds that neither of these actions constitute materially adverse employment actions.

Turning to the one arguable materially adverse action, both parties acknowledge Mr. Lopez received a Letter of Warning in December 2011. Citing cases that predate the Supreme Court's decision in Burlington Northern, Postmaster Brennan argues that courts generally do not deem letters of warning and reprimands adverse employment actions where they have not adversely affected the employee's employment or status in any manner. (Mot. 13–14, ECF No. 14.) As the Tenth Circuit stated in Somoza, the Burlington Northern case altered what a plaintiff must prove to establish a prima facie case of retaliation:

> No longer must a plaintiff prove that subsequent "adverse employment action" was taken against [him], as that phrase has been construed in Title VII discrimination cases. Rather the plaintiff must show that a reasonable employee would have found the action materially adverse such that they might be dissuaded from making a charge of discrimination.

513 F.3d at 1213; see also Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595–96 (6th Cir. 2007) (stating that the "materially adverse" standard is lower than the "adverse employment action standard" and sets a "relatively low bar"). Therefore, the Court finds the cases Postmaster Brennan cites inapplicable.

The Letter of Warning Mr. Lopez received states that "[f]uture deficiencies will result in more severe disciplinary action being taken against you" and that "[s]uch action may include a suspension[] or removal from the Postal Service." (Ex. G to Mot., Letter of Warning, ECF No. 14-8.) Receiving a Letter or Warning that includes the threat of suspension or even termination for future infractions is not trivial and could dissuade a "reasonable worker" from making a charge of discrimination. See Montano v. Donahoe, No. CV 14-0634 WJ/GJF, 2016 WL 5338520, at *10 (D.N.M. July 29, 2016) (unpublished) (finding that "receiving a Letter of Warning [is a] significant enough event[] which could dissuade a reasonable worker from making a charge of discrimination.") aff'd sub nom. Montano v. Brennan, 718 F. App'x 690 (10th Cir. 2017) (unpublished). Therefore under the standard articulated in Burlington Northern, the Court finds that the Letter of Warning could constitute a materially adverse action.

### C. Causal Connection

Postmaster Brennan further argues that Mr. Lopez's retaliation claim fails because he cannot establish a causal link between his complaints about Ms. Sugar's promotion in January 2011 and any action, or lack thereof, by management later in 2011. (Mot. 15, ECF No. 14.) Mr. Lopez concedes "he does not have the benefit of temporal proximity which might otherwise show a causal connection between Mr. Lopez'[s] complaints and the letter of warning" but claims that "[w]hat he does have is the incoherency of [the Postal Service's] reason for issuing in a letter of warning." (Opp'n 26, ECF No. 19.)

"To establish a causal connection, [a plaintiff] must present 'evidence of circumstances that justify an inference of retaliatory motive.'" Ward, 772 F.3d at 1203

(quoting <u>Williams v. W.D. Sports, N.M., Inc.</u>, 497 F.3d 1079, 1091 (10th Cir. 2007)).  "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection."  <u>Id.</u>  However, a period longer than three months between the protected activity and adverse action is insufficient to establish causation on summary judgment.  <u>See</u> <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999) (stating that a three-month period between the protected conduct and the adverse action is "insufficient to establish causation").  Where a plaintiff cannot establish causation through temporal proximity, he "must use 'additional evidence . . . to establish causation.'"  <u>Ward</u>, 772 F.3d at 1203 (quoting <u>Anderson</u>, 181 F.3d at 1179).

Using this additional evidence, a plaintiff must show that the materially adverse action would not have occurred "but for" his protected activity.  <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 360 (2013).  "The evidence of but-for causation 'must be based on more than mere speculation, conjecture, or surmise.'"  <u>Ward</u>, 772 F.3d at 1203 (quoting <u>Bones v. Honeywell Int'l, Inc.</u>, 366 F.3d 869, 875 (10th Cir. 2004)).

Mr. Lopez concedes he cannot take advantage of temporal proximity to establish causation.  (Opp'n 26, ECF No. 19.)  The Court agrees because Mr. Lopez complained about Ms. Sugar's promotion in January 2011, and Ms. Clark issued the Letter of Warning almost a year later, in December 2011.  Despite Mr. Lopez's acknowledgement that he cannot show causation through temporal proximity, he fails to point to any additional evidence connecting his complaints about Ms. Sugar's promotion to Ms. Clark's issuance of the Letter of Warning for failing to scan an express package as "attempted."  (<u>Id.</u> at 26–27.)

Instead, Mr. Lopez argues that the Postal Service's reason for issuing the letter is incoherent.  (Id.)  Specifically, he claims that management issued him discipline for "refusing to make a false representation" since he "had not and was not planning on attempting to deliver the package."  (Id. at 27.)  He claims "[t]his incoherency would support an inference that his local management's articulated reason for issuing him a letter of warning is pretextual."  (Id.)

As an initial matter, Mr. Lopez gets ahead of himself in arguing that the Postal Service's reason for issuing the Letter of Warning constitutes pretext.  Under the McDonnell-Douglas burden-shifting analysis, a plaintiff must first establish a prima facie case of retaliation.  See Hansen, 844 F.3d at 925.  And the prima facie case of retaliation requires the plaintiff to put forth evidence of a causal connection between the protected activity and the materially adverse action.  Id.  Only then does the burden shift to the employer to come forth with a legitimate, non-retaliatory rationale for the adverse employment action and then back to the plaintiff to show the employer's rationale reflects mere pretext.  See id.

More importantly, as Postmaster Brennan points out, Mr. Lopez fails to offer any evidence showing that Mr. Lopez's complaints about Ms. Sugar's promotion have any connection to Ms. Clark's issuance of the Letter of Warning for failing to scan an express package as "attempted."  Critically, no evidence exists that Ms. Clark knew about Mr. Lopez's complaints concerning Ms. Sugar's promotion.  The undisputed facts show that Mr. Lopez shared his complaints with Mr. Wright, who shared at least some of them with Ms. Higgs.  In addition, Mr. Lopez complained to Ms. Sugar about her promotion.  However, the undisputed facts also show that Ms. Clark is the individual

who issued the Letter of Warning and that Ms. Higgs had no involvement in issuing it. Because Mr. Lopez fails to set forth any evidence that Ms. Clark knew about the protected activity, i.e., his complaints about Ms. Sugar's promotion, he cannot show a causal connection between that activity and Ms. Clark's issuance of the Letter of Warning.  See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) (stating that to establish a causal connection, a "plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity"); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1203 (10th Cir. 2008) (stating that to show a causal connection, a plaintiff must "come forward with evidence from which a reasonable factfinder could conclude that those who decided to [take an adverse action against] him had knowledge of his protected activity").  Further, even if management's purported Dutch door policy or its failure to address Mr. Fields's harassment are materially adverse actions, Mr. Lopez fails to cite any evidence showing a connection between those activities and Ms. Clark's issuance of the Letter of Warning for violating a policy of which he was aware and had violated in the past.

Further, even if pretext were relevant to the causal connection analysis, the record does not support Mr. Lopez's argument.  The undisputed facts show that if a business receiving an express package is closed, and the package cannot be delivered, the Postal Service's 2011 policy  required a carrier to scan the package as "attempted" to "stop the clock" and avoid a refund to the sender.  The employee manual further instructed employees to follow instructions of their supervisors and file a formal protest or appeal afterwards if they disagreed with the instructions.  Given that Mr. Lopez did not follow this policy, Ms. Clark's issuance of the Letter of Warning for violating the

policy is not incoherent.  Moreover, as the Letter of Warning indicates, Mr. Lopez failed to adhere to this policy in the past and received prior warnings that he must comply with it, which further cuts against any argument that Ms. Clark would not have issued the Letter of Warning "but for" his complaints concerning Ms. Sugar's promotion.

Because Mr. Lopez fails to produce any evidence establishing a causal connection between his complaints concerning Ms. Sugar's promotion and Ms. Clark's issuance of the Letter of Warning or any other action (or inaction) taken by management, he fails to state a prima facie case of retaliation.  Accordingly, the Court GRANTS Postmaster Brennan summary judgment on the retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Postmaster Brennan's Motion for Summary Judgment as to all of Mr. Lopez's claims.

DATED this 28th day of September, 2018.

BY THE COURT:


EVELYN J. FURSE
United States Magistrate Judge